IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN G. BERG and<br>MAUREEN R. BERG<br><br>       Plaintiffs,<br><br> v.<br><br>JP MORGAN CHASE, NATIONAL<br>ASSOCIATION,<br><br>       Defendant. | CIVIL ACTION<br>NO. 14-04298 |

**PAPPERT, J.**                                   **MARCH 2, 2015**

## MEMORADUM

    Plaintiffs John G. Berg and Maureen R. Berg ("Bergs") bring this Quiet Title Action against JP Morgan Chase Bank, N.A.[1] ("Chase"), alleging that a mortgage note against their property was materially altered by an unauthorized endorsement and is therefore unenforceable. Chase moves to dismiss the Bergs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Doc. No. 3.) For the reasons set forth below, the Motion to Dismiss is granted.

**Factual and Procedural Background**

    On March 30, 2007, Plaintiff John G. Berg borrowed $1,425,000.00 from Washington Mutual Bank, FA ("Washington Mutual") as set forth in a promissory note ("Note"). (Compl. Ex. B, Doc. No. 1.) As security for the Note, the Bergs gave Washington Mutual a mortgage against their property located in Newtown Square, Pennsylvania. (*Id.*)

    Washington Mutual subsequently failed and entered into Federal Deposit Insurance Corporation ("FDIC") receivership on September 25, 2008. (Compl. ¶ 13.) That same day the

---

[1] Defendant JP Morgan Chase Bank, N. A., was improperly named as "JP Morgan Chase, National Association." The Court refers to the Defendant by its legal name.

FDIC transferred the Bergs' loan, along with all of Washington Mutual's other loans and loan commitments, to Chase pursuant to the terms of a written Purchase and Assumption Agreement. (Def.'s Aff. Supp. Mot. Dismiss, Ex. B, Doc. No. 4.)

At some point prior to September 25, 2008, Washington Mutual had endorsed the Note in blank with a stamp bearing the name Cynthia A. Riley, Vice President, Washington Mutual Bank, FA.  (Compl. ¶¶ 11-13, Ex. B).

On August 16, 2012, Chase filed a mortgage foreclosure action against the Bergs in the Delaware County Court of Common Pleas.  (Compl. ¶¶ 1-2.)  That action remains pending. (Def.'s Aff. Supp. Mot. Dismiss ¶ 5.)  Chase filed an Amended Complaint in that case on April 22, 2013 and attached the Note endorsed in blank.  The Bergs first learned of the Note's alteration from the Amended Complaint.  (Pl.'s Opp'n Mot. Dismiss 2, Doc. No. 6.)  The Bergs did not assert that the Note should be discharged due to the unauthorized endorsement when they answered the Amended Complaint.  (Def.'s Aff. Supp. Mot. Dismiss, Ex. E.)

The Bergs subsequently filed this separate Quiet Title Action in the Delaware County Court of Common Pleas.  In addition to alleging that the Note had been materially altered by the unauthorized endorsement, the Bergs contend that Chase was aware of the alteration prior to filing its mortgage foreclosure action.  (Compl. ¶ ¶ 8, 9-13, 18, 22.)

Chase removed the Bergs' suit to this Court and filed this motion to dismiss the Complaint.[2]  Chase argues that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") deprives the Court of subject matter jurisdiction.  (Def.'s Mot. Dismiss 11-12.)  The Bergs respond that FIRREA is inapplicable because they have not made a claim against Washington Mutual's assets and their claim does not seek monetary relief from

---

[2] Chase raises four additional arguments pursuant to Rule 12(b)(6) asserting that the Bergs failed to state a claim upon which relief may be granted.  Because the Court lacks subject matter jurisdiction, these arguments are not addressed.

Washington Mutual, the FDIC, or Chase. The Bergs also contend that they are exempt, as debtors, from FIRREA's requirements. (Pl.'s Opp'n Mot. Dismiss 7-9.)

**Legal Standard**

"At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Consequently, a court must grant a motion to dismiss under Rule 12(b)(1) if it lacks subject matter jurisdiction to hear the claim. *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). In evaluating such a motion, a court must first determine whether the movant presents a facial or factual challenge. *Id.* (citing *Mortensen*, 549 F.2d at 891). A facial attack "'concerns an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claim to comport [factually] with the jurisdictional prerequisites.'" *See CNA v. United States,* 535 F.3d 132, 139 (3d Cir. 2008) (quoting *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,* 473 F.3d 506, 514 (3d Cir. 2007))).

Chase presents a factual challenge. Accordingly, the Court is not "confined to the allegations in [the...] complaint," and the Court is "entitled to independently evaluate the evidence to resolve disputes over jurisdictional facts." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012).

**Discussion**

FIRREA, which was passed in response to the savings and loan crisis of the 1980s, grants the FDIC the authority to act as a receiver or conservator for failed institutions. *Tellado v. IndyMac Mortg. Serv.*, 707 F.3d 275, 279 (3d Cir. 2013). The statute also creates an administrative claims process for institutions in receivership, which necessarily limits judicial

review of those claims.  *Id.* (citing 12 U.S.C. § 1821(d)(3)-(13)).  Because of the availability of this administrative procedure, FIRREA bars any court from exercising jurisdiction over:

>   (i)   any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets for which the [FDIC] may acquire from itself as such receiver; or
>
>   (ii)  any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D).

The Third Circuit has interpreted section 1821(d)(13)(D) to be a "statutory exhaustion requirement."  *Tellado*, 707 F.3d at 279; *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 383 (3d Cir. 1994); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391-92 (3d Cir. 1991).  The Bergs' claim implicates clause (ii) because the factual allegations underlying that claim relate exclusively to an act by Washington Mutual, the depository institution.  Under section 1821(d)(13)(D)(ii), courts do not have jurisdiction over a claim relating to any act or omission of the failed institution so long as the claim falls within the claims procedure outlined in section 1821(d).  *Rosa*, 938 F.2d at 394-95.  FIRREA's jurisdictional bar applies equally to claims brought against the purchasing bank if the claims are based on the conduct of the acquired depository institution.  *Tellado*, 707 F.3d at 280-81; *see also In re Stewart et al. v. Chase Bank et al.*, No. 12-1243, 2013 U.S. Dist. LEXIS 111516, at *38 (W.D. Pa Aug. 8, 2013) (holding that because debtor's claims "involve 'acts and omissions' of the failed institution [Washington Mutual], a failure to bring those claims under the FIRREA bars the bankruptcy court and [the district] court from exercising jurisdiction").

In *Tellado*, the Third Circuit concluded that the plaintiff's claim was "functionally, albeit not formally, against" the failed institution.  *Tellado*, 707 F.3d at 280.  The plaintiff, a Spanish

4

speaking individual, refinanced his mortgage with IndyMac Bank, FSB ("IndyMac") prior to its failure. *Id.* at 277. IndyMac's closing agent and notary provided the plaintiff with English versions of the relevant loan documents, including the notice of the right to cancel. *Id.* After IndyMac entered FDIC receivership, the plaintiff's loan was transferred to OneWest Bank FSB ("OneWest"). *Id.* The plaintiff then sent a notice of cancellation to OneWest pursuant to Pennsylvania's Unfair Trade Practices and Consumer Protection Law because the statute required that he receive a Spanish version of the notice of the right to cancel. *Id.* at 277-78. OneWest refused to cancel the loan and the plaintiff filed suit. *Id.* at 278. The Third Circuit concluded that even though the claim was formally brought against OneWest based on its refusal to cancel the loan, "Tellado's claim [was] not a claim of independent misconduct by OneWest; rather, it relate[d] to an act or omission of the depository institution, IndyMac, and [was], therefore, jurisdictionally barred under section 1821(d)(13)(D)(ii)." *Id.* at 280.

The facts underlying the Bergs' claim are similar to those in *Tellado*. Though the Bergs formally brought this claim against Chase, the purchasing bank, their claim is based entirely on conduct by Washington Mutual, the depository institution. The alleged defect in the Note exists only because the Note was endorsed in blank with a stamp bearing a Washington Mutual employee's name. Moreover, the Bergs specifically assert that the endorsement in blank was affixed to the Note "sometime after March 30, 2007, which was the date on which John Berg executed the Note . . . and prior to September 25, 2008, which was the date on which the Federal Deposit Insurance Corporation ('FDIC') seized the banking assets of Washington Mutual Bank." (Compl. ¶ 13.) The Bergs do not allege any independent misconduct by Chase in support of their claim.[3] Absent Washington Mutual's conduct, they would have no right to challenge the validity

---

[3] The Bergs contend that Chase had knowledge of the unauthorized endorsement in blank prior to filing the Amended Complaint seeking to enforce the Note. (Compl. ¶ 22.) This allegation of knowledge initially appeared to

5

of the Note and thus no claim. Because the Bergs' claim is based entirely on an act of the depository institution, Washington Mutual, section 1821(d)(13)(D)(ii) deprives the Court of subject matter jurisdiction.

The Bergs do not contend that they have exhausted the requisite administrative remedies; they argue instead that FIRREA is inapplicable to their claim. The Bergs contend that the Third Circuit, in *Rosa v. Resolution Trust Corp.*, held that FIRREA does not bar claims for non-monetary relief because it "was intended to focus on claims 'looking directly to payments from or recovery of assets, or in some other respect determining rights with respect to assets." (Pl.'s Opp'n Mot. Dismiss 7-8.) Based on their interpretation of this case, the Bergs assert that FIRREA does not apply because they have "not raised any objection to Chase's claims of ownership of the asset (the Note) in this action." *Id.*

The Bergs' reliance on the portion of *Rosa* cited in its Memorandum of Law is misplaced. In *Rosa*, the Third Circuit analyzed the plaintiff's claim for injunctive relief under clauses (i) and (ii) of section 1821(d)(13)(D). *Rosa*, 938 F.2d at 394. The Court concluded that the statute's emphasis on *asset* was pertinent for its interpretation of clause (i). *Id.* ("We believe the emphasis on 'assets' suggests that *clause (i)* addresses claims looking directly to payment from or recovery of assets, or in some other respect determining rights with respect to assets." (emphasis added)). As discussed above, clause (i) is not implicated here.

The Third Circuit, however, did not reach the same conclusion with regard to clause (ii). Rather, it held that a claim that relates to an act or omission of a failed institution is barred if the claim is susceptible to resolution through the claims procedure. *Id.* The Court determined that it "was at a loss to understand how [the receiver] would 'determine,' or 'allow' or 'disallow,' a

---

be a fraud claim. However, the Bergs clarified that "they seek no relief from Chase; they merely seek to remove a cloud on their title." (Pl's Opp'n Mot. Dismiss 6.) Thus, the allegation as to what Chase knew and when it knew it does not alter the fact that the Bergs' claim is based exclusively on an act by Washington Mutual.

claim seeking [the injunctive relief requested], or how it would 'pay' such a claim if allowed." *Id.* at 395. The Third Circuit accordingly held that the plaintiff's claim for injunctive relief was not susceptible to the claims procedure and, thus, not jurisdictionally barred by clause (ii). *Id. Rosa* did not expressly limit the administrative exhaustion requirements to claims specifically directed at the assets of the depository institution.

The Bergs also argue that FIRREA is inapplicable because their request for a discharge of debt does not constitute a claim for damages against Washington Mutual, the FDIC or Chase. (Pl.'s Opp'n Mot. Dismiss 8.) Rather, Plaintiffs characterize their claim as one seeking relief from a "defect in the instrument acquired by Chase from FDIC, originating with [Washington Mutual]." (*Id.*) This argument appears to be another version of the Bergs' contention that their claim is exempt from FIRREA's jurisdictional bar because they seek equitable relief.

The nature of the claim, however, does not dictate the applicability of section 1821(d)(13)(D)(ii). If the claim is susceptible to resolution through the claims procedure, clause (ii) divests the court of subject matter jurisdiction, regardless of the specific type of relief sought. *See Rosa*, 938 F.2d at 395. Like the plaintiff in *Tellado*, the Bergs seek equitable relief against the purchasing bank based exclusively on the failed institution's conduct. *Tellado*, 707 F.3d at 278, 281 (concluding that Tellado's equitable claim and his alternative claims for damages were all jurisdictionally barred). Accordingly, the Bergs' claim could be resolved through the claims procedure and is thus jurisdictionally barred.

The Bergs additionally seem to contend that FIRREA is inapplicable because they are not creditors of the depository institution. (Pl.'s Opp'n Mot. Dismiss 9.) While their position is not entirely clear, they appear to argue that section 1821(d)(13)(D)'s jurisdictional bar could not have been intended to deprive the Court of jurisdiction for actions brought by non-creditors

because under sections 1821(d)(3)(B) and (C) only *creditors* are given notice to submit claims to the receiver.

The jurisdictional bar in section 1821(d)(13)(D) applies to debtors and creditors of failed institutions. The Third Circuit rejected "the suggestion that the broad bar to jurisdiction indicated by the plain language of § 1821(d)(13)(D) should be strained and limited by referring to the administrative claims procedure of § 1821(d)(3), (d)(5), and (d)(6)" and concluded that the "class of actions addressed by the jurisdictional bar is [not] necessarily identical to the class of actions addressed by the administrative claims procedure." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 386 (3d Cir. 1994). Indeed, the Third Circuit in *Praxis Properties Inc. v. Colonial Savings Bank, S.L.A.* applied FIRREA's exhaustion requirements to debtors, like the Bergs, who raised claims regarding a mortgage note. In *Praxis*, the bank lent Praxis Properties $1.8 million, which Praxis secured by giving the bank a mortgage on property it owned. *Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 52 (3d Cir. 1991). Subsequently, Praxis negotiated with the bank for the release of the note. The bank failed and the Resolution Trust Corporation ("RTC") was appointed as receiver before the note was released. *Id.* Praxis then demanded that the RTC release the note. *Id.* RTC refused and Praxis brought an action in state court. *Id.* The Third Circuit determined, before proceeding to the merits of that case, that the district court had subject matter jurisdiction because Praxis had exhausted its administrative remedies. *Id.* at 64. Thus, the Third Circuit assumed, without specifically holding, that a debtor of the failed institution must also exhaust the administrative remedies prior to filing suit. Subsequently, courts have applied this jurisdictional bar to debtors. *See, e.g.*, *Tellado*, 707 F.3d 275; *Duraney v. F.D.I.C.*, 388 F. App'x 102, 103-04 (3d Cir. 2010) (concluding that an appeal brought by a debtor in mortgage foreclosure action was

jurisdictionally barred by section 1821(d)(13)(D) because the debtor failed to exhaust the administrative remedies); *In re Stewart et al.*, 2013 U.S. Dist. LEXIS 111516, at *39 ("Because *Debtors* failed to pursue their claims by way of the administrative claims process with the FDIC to exhaustion, the bankruptcy court and this court lack jurisdiction to hear their claims and those claims were properly dismissed for lack of subject-matter jurisdiction." (emphasis added)); *see also Burroughs v. Colony First Fed. Savs. & Loan Ass'n*, 858 F. Supp. 58, 61 (W.D. Pa. 1994) (analyzing the Third Circuit's decision in *Praxis* and holding that the jurisdictional bar under section 1821(d)(13)(D) applies equally to debtors of the failed institution). Thus, the Bergs' status as debtors does not insulate them from the requirement that they exhaust their administrative remedies.

  The Bergs failed to exhaust their administrative remedies as required by section 1821(d). That failure bars both this Court and the Pennsylvania Courts of Common Pleas from exercising subject matter jurisdiction over this action. 12 U.S.C. § 1821(d)(13)(D) ("…*no court* shall have jurisdiction over…"); *F.D.I.C. v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 131 (3d Cir. 1991) ("FIRREA's claims procedure in section 1821(d) is exclusive."). Since no court may exercise subject matter jurisdiction over their Quiet Title Action, the Complaint must be dismissed. *Wujick v. Dale & Dale, Inc.*, 43 F.3d 790, 794 (3d Cir. 1994) ("Since the state court also lacked subject matter jurisdiction for the same reason, a remand by the district court would be a vacuous act. We will therefore direct the district court to dismiss the claims against RTC."). The Complaint is accordingly dismissed.

An appropriate Order follows.

                  /s/ Gerald J. Pappert
                  GERALD J. PAPPERT, J